IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Walter Clayton Ruff, Jr., ) | |
| ) | Civil Action No. 8:12-3522-MGL-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Sergeant Matt Bowers; Captain Wesley ) | |
| Boland;, Investigator Nick Bouknight; ) | |
| and James Lee Foster, Newberry ) | |
| County Sheriff, | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 19). The plaintiff, who is proceeding with counsel, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

On May 28, 2013, the defendants filed a motion for summary judgment (doc. 19). On June 26, 2013, the plaintiff filed his response in opposition to the motion for summary judgment (doc. 26). The defendants filed a reply on July 3, 2013 (doc. 28).

**FACTS PRESENTED**

According to the affidavits of defendants Sergeant Matt Bowers and Captain Wesley Boland of the Newberry County Sheriff's Office, on February 14, 2008, they were on patrol searching for a wanted person on Aull Street in Pomaria, South Carolina. As they were driving down the street, the defendants observed the plaintiff along with two other persons standing in front of 145 Aull Street, directly outside the front door of the house. From their patrol car, defendants Bowers and Boland state that they saw the plaintiff holding a green leafy substance in his hand that they suspected to be marijuana. As soon

as the plaintiff noticed the defendants in the patrol car, he attempted to leave the area. Defendants Bowers and Boland exited their vehicle, and the plaintiff ran toward a house located at 151 Aull Street. Defendants Bowers and Boland chased the plaintiff and ordered him to stop, but the plaintiff continued to run. Bowers and Boland state that as the pursuit began, they noticed the plaintiff drop suspected contraband near the road right outside of the house at 145 Aull Street. When the plaintiff reached 151 Aull Street, he pushed his way through the front door, and defendant Boland grabbed him from behind. Both Boland and the plaintiff fell through the door on to the floor. Both defendants Bowers and Boland commanded the plaintiff to stop resisting and to put his hands behind his back, and when the plaintiff continued to struggle with defendant Boland, defendant Bowers deployed his taser, striking the plaintiff in his front torso. The plaintiff then complied. Defendants Bowers and Boland noticed that the other two individuals[1] were standing near the area where the plaintiff had dropped the suspected contraband. The plaintiff, who was not yet handcuffed, began to resist again, and defendant Bowers again deployed his taser. Defendant Boland was then able to handcuff the plaintiff. Additional officers then arrived at the scene and detained the other two individuals. A plastic bag containing a green leafy substance believed to be marijuana was taken from the plaintiff's hand. The other two individuals admitted that they grabbed the contraband initially dropped by the plaintiff near the road, which also contained a green leafy substance believed to be marijuana. Additionally, defendant Boland located a small piece of white, rock-like substance believed to be crack cocaine on the floor just inside the open door of 145 Aull Street, where the initial pursuit began. The plaintiff was issued a summons for resisting arrest[2] and charged with possession of crack cocaine and marijuana (doc. 19-2, Bowers aff.; doc. 19-3, Boland aff.; doc. 19-4, incident reports). According to the SLED Forensic Services Laboratory Report,

---

[1] These individuals were identified as Patricia Cannon and Carl Flemon in the incident report (doc. 19-4, incident reports).

[2] The plaintiff has not challenged his charge for resisting arrest nor has he claimed that the defendants used excessive force in detaining him.

the green leafy substance was 5.34 grams of marijuana, and the rock substance was .11 grams of cocaine base (crack) (doc. 10-2, answer, ex. B, SLED Forensics Report).

The plaintiff's possession of crack cocaine charge was *nolle prossed* on November 3, 2009, with leave to re-indict (doc. 10-1, answer, ex. A., C. Yates Brown, Jr. aff. ¶ 4). The resisting arrest and possession of marijuana charges were *nolle prossed* without prejudice, on April 27, 2012. According to the prosecutor who made the decision to *nolle prosse* the marijuana and resisting arrest charges, he "was not passing judgment on whether the 'probable cause' standard had been met when the arrest was made." Rather, the decision was made based on the number of cases he had pending, the severity of the charges, and the fact that it had been four years since the arrest, during which time the plaintiff had maintained a relatively clean record (*id.* ¶¶ 6-7).

According to the affidavit of the plaintiff, he was harassed by defendant Bowers[3] in 2008, so he became a critic of defendant Bowers and the Sheriff's Department. He claims that he complained and made a report to internal affairs officer Major Danny Gilliam and defendant Sheriff Foster[4] regarding threats made by defendant Bowers against him (doc. 26-3, pl. aff. ¶ 1). The plaintiff states in his affidavit that on February 14, 2008, he was sitting in Carl Flemon's front yard at 145 Aull Street when the defendants drove up. He began to leave the yard to avoid being harassed, but was restrained and tasered by the defendants. The plaintiff states that he was not carrying marijuana or a plastic bag as defendant Bowers stated in his incident report. He further claims that the officers prepared a false incident report stating that the plaintiff both dropped the marijuana in the roadway where Flemon later picked it up and that it was found in the plaintiff's hand. The plaintiff attests that he never entered his friend's house at 145 Aull Street where the crack cocaine

---

[3] In his complaint, the plaintiff alleges that he was harassed by defendant Bouknight, not Bowers, in 2008 (doc. 1, comp. ¶ 6). There is no further mention of defendant Bouknight in the complaint, and the plaintiff does not mention him at all in his affidavit (*see id.;* doc. 26-3, pl. aff.).

[4] This is the only mention of defendant Sheriff Foster in the plaintiff's affidavit. No factual allegations are made against this defendant in the complaint (*see* doc. 1, comp.; doc. 26-3, pl. aff.).

was later found. The plaintiff claims that after the charges were *nolle prossed*, he was told by the prosecutor to drop his lawsuit or the criminal charges would be reinstated (docs. 26-3 and 26-4, pl. aff.).

Ebony Lindsay and Patricia Cannon state in affidavits that they were with the plaintiff in the yard on Aull Street on February 14, 2008. They further state that Carl Flemon was inside the house at that address, where Flemon resides, and was talking with them when defendants Bowers and Boland arrived. They further attest that the plaintiff had nothing in his hand when the officers arrived and that the officers lied when they stated that the plaintiff had contraband. They further testify that the plaintiff never entered the house at 145 Aull Street, where the crack cocaine was later found (doc. 26-1, Cannon aff.; doc. 26-2, Lindsay aff.). Cannon also states in her affidavit that defendants Bowers and Boland had previously told her that they "had it in" for the plaintiff (doc. 26-1, Cannon aff. ¶ 2). Carl Flemon states in his affidavit that the plaintiff never entered his home (docs. 26-5 and 26-6, Flemon aff.). Cannon and Flemon were arrested for possession of the crack found inside the house at 145 Aull Street (*id.* ¶ 11).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Fourth Amendment***

In his first cause of action, entitled "Violation of Fourth Amendment Due Process," the plaintiff alleges that the defendants "did imprison and prosecute the Plaintiff maliciously and without probable cause" (doc. 1, comp. ¶ 15).  In his second cause of action, entitled "Violation of Fourth Amendment," the plaintiff alleges that the defendants "violated the rights of the Plaintiff under the Fourth Amendment to the U.S. Constitution causing the Plaintiff to be arrested and imprisoned without probable cause" (*id.* ¶ 18). Similarly, in his fourth cause of action, entitled "Malicious Prosecution," the plaintiff alleges that the defendants "did without probable cause[,] cause Plaintiff to be prosecuted for the offenses heretofore set forth" (*id.* ¶ 24).

The Fourth Amendment to the United States Constitution provides that the people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual

5

effected without probable cause is unreasonable." *Brooks v. City of Winston–Salem*, 85 F.3d 178, 183 (4th Cir.1996) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). So long as the officer supports the arrest with probable cause, the police have not committed a constitutional violation. *See S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 274 (4th Cir. 1998). "While it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, . . . if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure." *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009) (citations omitted).

Based upon the foregoing, the pivotal issue on all three of these causes of action is whether defendants Bowers and Boland had probable cause to arrest the plaintiff. For probable cause to exist, there need only be sufficient evidence to warrant the belief of a reasonable officer that an offense has been or is being committed. *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). *See also Wong Sun v. United States*, 371 U.S. 471, 479 (1963). The law does not require that the officer have evidence sufficient to convict the criminal defendant. *Brown*, 278 F.3d at 367. The Supreme Court defines probable cause as a "commonsense, nontechnical" concept that deals "with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotation marks omitted) (citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). The United States Court of Appeals for the Fourth Circuit has stated that the probable cause standard does not require that the officer's belief be more likely true than false. *United States v. Humphries*, 372 F.3d 653, 660 (4th Cir.2004) (citing *United States v. Jones*, 31 F.3d 1304, 1313 (4th Cir.1994)). Thus, a probable cause determination turns on the assessment of probabilities. *Gates*, 462 U.S. at 232. "[O]nly the probability, not a prima facie showing, of criminal activity is the standard of probable cause." *Id*. at 235 (citation omitted). "In the criminal arrest context, probable cause exists where 'the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in

believing that the defendant had committed or was committing an offense.'" *Cloaninger v. McDevitt*, 555 F.3d 324, 334 (4th Cir. 2009) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

The evidence before the court shows that defendants Bowers and Boland had probable cause to arrest the plaintiff. Both officers testified that they saw the plaintiff in plain view with a substance that they believed to be marijuana (*see* doc. 19-3, Boland aff. ¶ 3; doc. 19-2, Bowers aff. ¶ 3). Furthermore, while the plaintiff denies that he had marijuana, he admits that he ran when he saw the officers, and he did not stop when they ordered him to do so. The plaintiff further admits that the officers told him that he would be tasered if he did not "restrain [his] movement." The plaintiff does not deny in his affidavit that he resisted arrest (*see* docs. 26-3 and 26-4, pl. aff.). *See United States v. Humphries*, 372 F.3d 653, 657-58 (4th Cir. 2004) (explaining, in context of probable cause analysis, that officers may consider "evasive conduct that falls short of headlong flight," such as walking away from approaching officers at a quick pace and ignoring commands to stop). Importantly, the subsequent lab report revealed that the substances found at the scene were marijuana and crack cocaine (*see* doc. 20-2, answer, ex. B, SLED Forensics Report). Here, the facts and circumstances within the officers' knowledge were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense. Accordingly, the defendants had probable cause to arrest the plaintiff, and, therefore, summary judgment should be granted on the plaintiff's Fourth Amendment claims.

Moreover, with regard to the malicious prosecution claim, the favorable termination "element is satisfied where a prior criminal case against the plaintiff has been disposed of in a way that indicates the plaintiff[']s innocence." *Snider*, 584 F.3d at 202 (4th Cir. 2009) (Stamp, J. concurring) (citing *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir.1997) ("Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused.")). "Courts have held that a simple, unexplained *nolle prosequi*, dismissal, or disposal of pending state charges that results in the dismissal of the charges for reasons other than the defendant's innocence does not satisfy the favorable termination

requirement." *Hewitt v. D.P. Garrison*, C.A. No. 6:12-3403-TMC, 2013 WL 6654237, at *2 (D.S.C. Dec. 17, 2013) (citing *Jackson v. Gable*, C.A. No. 0:05–2591–HFF–BM, 2006 WL 1487047, at *6 (D.S.C. May 25, 2006) (stating that indictments that were *nol prossed* with leave to re-indict was not a "favorable disposition of these charges under South Carolina law")). The plaintiff has presented no evidence that the charges were *nol prossed* based upon his innocence, and the prosecutor has testified that the decision was based upon other considerations. Accordingly, this claim also fails for this additional reason.

***Civil conspiracy***

In his third cause of action, the plaintiff alleges that the defendants conspired with third parties "and acted in concert to commit illegal acts and/or to commit legal acts by illegal means to harm Plaintiff" (comp. ¶ 21). To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the deprivation of a constitutional right. *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996)). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. *Hinkle*, 81 F.3d at 421. A plaintiff's factual allegations must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* A plaintiff's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422.

Viewing the evidence in a light most favorable to the plaintiff, he has failed to come forward with specific evidence that the defendants conspired to injure him by depriving him of his constitutional rights. The fact that two police officers joined together to arrest the plaintiff is not specific circumstantial evidence of a conspiracy. As his conclusory allegations are insufficient to state a claim for civil conspiracy, summary judgment should be granted on this claim.

*First Amendment*

The plaintiff's sixth cause of action alleges that the defendants "did punish him for his political speech in arresting and prosecuting him and did then attempt to prevent him from speaking further by intimidation" in violation of his First Amendment rights (doc. 1, comp. ¶ 30).  To the extent the plaintiff asserts a First Amendment retaliation claim, the plaintiff must prove: "First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir.2000) (citations omitted).

In viewing the facts in a light most favorable to the plaintiff, a reasonable jury could not conclude that the defendants violated the plaintiff's First Amendment rights. First, the plaintiff does not set forth any specific speech for which he was punished, but instead asserts that it was "political speech" (doc. 1, comp. ¶ 30).  In his affidavit, the plaintiff claims that he complained of harassment by defendant Bowers to Maj. Danny Gilliam and Sheriff Foster (doc. 26-3, pl. aff. ¶ 1).  Presumably, this complaint is the "political speech" alleged in the complaint. However, the plaintiff has failed to present any evidence showing a causal connection between his complaint and his arrest, which, as set forth above, was supported by probable cause.  As the plaintiff has failed to provide any evidence raising a genuine issue of material fact that would allow a reasonable jury to find that he was arrested based on his speech, summary judgment is appropriate on this cause of action.

*Equal Protection*

In his seventh cause of action, the plaintiff alleges that the defendant discriminated against him because of his race and indigency in violation of his Fourteenth Amendment right to equal protection (doc. 1, comp. ¶ 33).  " 'To bring a successful claim under 42 U.S.C. §1983 for a denial of equal protection [under the Fourteenth Amendment], plaintiffs must prove the existence of purposeful discrimination.' " *Chambers v. School Dist.*

9

*of Philadelphia Bd. of Educ.*, 587 F.3d 176, 196 (3d. Cir. 2009) (quoting *Andrews v. Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)).  The plaintiff must demonstrate "that [he] received different treatment from that received by other individuals similarly situated." *Id.*  A discriminatory purpose is not presumed. *Tarrance v. State of Florida*, 188 U.S. 519, 520 (1903).  " 'A violation of the Equal Protection Clause still requires a showing of clear and intentional discrimination.' " *Singletary v. City of North Charleston*, 2012 WL 1309183, at *9 (D.S.C. April 16, 2012) (quoting *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 825 (4th Cir. 19995)).

The plaintiff has failed to set forth any evidence in which a reasonable jury could conclude that he was purposefully discriminated against based on either his race or indigency. The plaintiff has set forth no facts, nor made any allegations, that the defendants made racial comments during the course of his arrest, that the defendants have a history of making racial comments during the course of an arrest, that the that defendants have a prior history of arresting people based on race or indigency, or any other evidence that may show a discriminatory design to favor a class of individuals over another.  The plaintiff appears to admit that he has no evidence supporting this claim in the memorandum in opposition to the motion for summary judgment, stating, "Defendant Bowers singled Plaintiff out for special treatment.  Plaintiff can only infer it is because of his race and indigency" (doc. 26, pl. resp. m.s.j. 4).  As the plaintiff has not provided any evidence that would allow a reasonable jury to conclude he was arrested based on his race or indigency, summary judgment should be granted on this cause of action.

***Eleventh Amendment Immunity***

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but

rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* The defendants are employees of the Newberry County Sheriff's Office. It is well settled, both in South Carolina and federal law, that a Sheriff in South Carolina is an arm of the State and not a County employee and therefore is entitled to Eleventh Amendment Immunity in his or her official capacity from suit in Federal Court. *See Cromer*, 88 F.3d at 1332. This status has been extended to deputy sheriffs as well. *See McCall v. Williams*, 52 F.Supp.2d 611, 615 (D.S.C. 1999). As a result, the defendants are entitled to Eleventh Amendment immunity to the extent the plaintiff has alleged claims for monetary relief against them in their official capacities.

### *Qualified Immunity*

The defendants are also entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). As discussed above, the plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights. Therefore, the defendants are entitled to the protections afforded by the doctrine of qualified immunity.

*Supervisory Liability*

Here, the plaintiff has failed to allege or show that defendants Investigator Nick Bouknight and Sheriff Foster were in any way involved in the allegations of denial of his constitutional rights. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). To the extent the plaintiff seeks to hold either of these defendants liable in his supervisory capacity, the doctrine of respondeat superior generally is inapplicable to Section 1983 or *Bivens* suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to make the required showing here. Accordingly, defendants Bouknight and Foster are entitled to summary judgment.

*State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief construed by the court to be asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

**CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 19) be granted  as set forth above.

IT IS SO RECOMMENDED.


    s/ Kevin F. McDonald
    United States Magistrate Judge

February 5, 2014
Greenville, South Carolina